Filed 1/4/02 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2002 ND 2

Faron E. Terry, Plaintiff and Appellee

v.

Lana K. Terry, Defendant and Appellant

No. 20010039

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Gail H. Hagerty, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Paul M. Probst, Probst Law Firm, Northland Professional Building, 600 22nd Avenue NW, Minot, N.D. 58703-0986, for plaintiff and appellee.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., P.O. Box 939, Minot, N.D. 58702-0939, for defendant and appellant.

Terry v. Terry

No. 20010039

VandeWalle, Chief Justice.

[¶1] Lana Terry appealed from a district court order denying her motion under N.D.R.Civ.P. 60(b) to vacate a divorce judgment.  We hold the trial court did not abuse its discretion in ruling Lana Terry failed to demonstrate adequate grounds to vacate the divorce decree, and we affirm.

I

[¶2] Faron and Lana Terry were married in February 1986.  Together they have a daughter and a son.  After 14 years of marriage, irreconcilable differences developed in their relationship and Faron filed for divorce.  There was no trial.  Rather, the parties entered into a stipulation, agreeing to all issues relating to the divorce, which was incorporated into the divorce decree. The stipulation was dated December 29, 1999 and an addendum modifying the stipulation was signed on January 5, 2000.  These documents and the complaint were filed with the court on January 20, 2000.  The trial court accepted the parties’ stipulation, as amended, and incorporated it into the divorce judgment, which was entered on January 24, 2000.

[¶3] On August 29, 2000, Lana filed a motion under N.D.R.Civ.P. 60(b), requesting the district court to vacate the divorce judgment and reopen the case.  She claimed Faron, who is an attorney, used undue influence and pressured her to accept the terms of the stipulation; she alleged Faron told her she would lose custody of the children if she did not agree to it.  After a hearing on the motion, the district court concluded the stipulation was not obviously unfair and Lana failed to demonstrate wrongdoing by Faron or the existence of injustice warranting the vacating of the divorce judgment.  The district court also concluded there was no evidence to show Lana was prevented from or unable to seek independent legal advice before agreeing to the terms of the divorce and signing the stipulation.  The court entered an order denying the motion, which is the subject of this appeal.

II

[¶4] On appeal, Lana asserts the trial court abused its discretion in refusing to vacate the divorce decree and grant her a hearing on the issues of property division and spousal support.  Under N.D.R.Civ.P. 60(b), the court may relieve a party from a final judgment for, among other things, fraud, misrepresentation, or other misconduct of an adverse party or any other reason justifying relief from the operation of the judgment.  In reviewing a trial court’s denial of a motion under N.D.R.Civ.P. 60(b) to set aside a regularly entered judgment, we do not determine whether the trial court was substantively correct in entering the judgment from which relief is sought, but determine only if the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not established.  
Clooten v. Clooten
, 520 N.W.2d 843, 845 (N.D. 1994).  The trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner.  
Crawford v. Crawford
, 524 N.W.2d 833, 835 (N.D. 1994).  A trial court acts in an arbitrary, unreasonable, or unconscionable manner when its decision is not the product of a rational mental process by which the facts and law relied on are stated and considered together for the purpose of achieving a reasoned and reasonable determination.  
Peterson v. Peterson
, 555 N.W.2d 359, 361 (N.D. 1996).  If the judgment sought to be set aside is entered pursuant to a stipulation of the parties, the party challenging the judgment has the additional burden of showing that under the law of contracts there is justification for setting aside the stipulation.  
Id.
  Relief under N.D.R.Civ.P. 60(b) for fraud, misrepresentation, or other misconduct is extraordinary relief and should be granted only in exceptional circumstances.  
Soli v. Soli
, 534 N.W.2d 21, 23 (N.D. 1995).

A

[¶5] Lana asserts the judgment should be vacated because she was not represented by independent counsel prior to entering into the stipulation and Faron used undue influence and pressure to convince her to agree to the terms of the divorce, including statements that no attorney would represent her and that she would not be able to get spousal support as long as she was working.  The trial court found Faron never claimed to be representing Lana in these proceedings and, although it was unclear whether Lana had contacted an attorney before signing the stipulation, there was no evidence to demonstrate she was prevented from or unable to secure independent legal advice.  The trial court’s findings are not disturbed on appeal unless they are clearly erroneous.  N.D.R.Civ.P. 52(a).  We conclude these findings are supported by the record evidence.

[¶6] The stipulation states in bold print immediately above the parties’ signatures that Lana “has not been given legal advice or counsel by Faron E. Terry of Terry Law Office” and that she “has had an opportunity to consult with an attorney of . . . her choice prior to entering this stipulation.”  Faron testified that, in hopes he and Lana could reconcile, he abstained from filing the divorce documents until Lana telephoned him and urged him to file the papers and get the divorce completed.  Lana does not dispute this testimony.

[¶7] The parties’ stipulation was amended a few days after it was signed, changing the debt and property distribution provisions.  This addendum supports the trial court’s conclusion that the parties negotiated the terms of the stipulation and that Lana made specific requests which were incorporated into the parties’ agreed-upon divorce terms.  The stipulation appears to be a product of free choice.  Rule 60(b), N.D.R.Civ.P., is not to be used to relieve a party “from free, calculated, and deliberate choices he or she has made. ” 
Fleck v. Fleck
, 337 N.W.2d 786, 791 (N.D. 1983).

B

[¶8] Lana asserts she was severely distressed during the breakup of the marriage and she was not mentally able to voluntarily stipulate to the terms of the divorce.  During the motion hearing, Lana introduced testimony by a psychiatric nurse that Lana suffered from traumatic stress disorder and chronic depression.  However, the nurse first saw Lana on July 11, 2000, many months after the divorce judgment had been entered, and she had no independent knowledge that Lana experienced those conditions during the divorce proceedings.  Furthermore, the nurse did not testify Lana’s depression or stress disorder, if present when she signed the stipulation, would have rendered her incapable of making voluntary choices or incompetent to contract.  There was also no testimony that the depression and stress suffered by Lana was significantly worse than that often experienced by spouses during marital breakdowns.

[¶9] The facts of this case are distinguishable from those in 
Galloway v. Galloway
, 281 N.W.2d 804, 807 (N.D. 1979), wherein this Court concluded a divorce judgment entered upon a stipulation of the parties should be partially vacated because the wife was incompetent to enter a contractual agreement.  In 
Galloway
 it was undisputed that the wife suffered from alcoholism and that, a few months after entry of the divorce judgment, she was declared incompetent and needed a guardian and conservator to handle her personal affairs.

[¶10] Here, the trial court made the following specific findings: 

Lana Terry was able to continue to work, take on added job responsibilities and begin a new job during the time period in question.  She was involved in at least one relationship which she terminated because she did not feel it was a positive relationship.  The evidence does not support Lana Terry’s claim she was not able to make a reasoned decision when she entered into the stipulation on which the judgment in this case was based.

We conclude the trial court’s findings on this issue are supported by the record and are not clearly erroneous.

C

[¶11] Lana asserts the divorce judgment should be vacated because it is unconscionable.  In support of this contention she relies upon the decision in 
Crawford v. Crawford
, 524 N.W.2d 833, 835 (N.D. 1994), wherein this Court held a divorce judgment should be vacated when “the stipulation is so one-sided and creates such hardship that it is unconscionable.”  In 
Crawford
, the husband was a doctor who was earning $130,000 per year while the wife was working as a meat wrapper for $300 per month.  The husband received custody of the parties’ four children and the wife was ordered to pay $15 per month in child support.  Although the husband was earning nearly $11,000 per month, the stipulation and decree provided that he would pay his wife only $250 per month spousal support for a total of six months.  This Court concluded the stipulation and resulting judgment was “so blatantly one-sided and so rankly unfair” it was unconscionable and unenforceable.  
Id.
 
at 836.

[¶12] The stipulated divorce terms in this case are distinguishable from those in 
Crawford
.  While there is a difference in income between the parties, it is not nearly as disparate as in 
Crawford
.  The stipulation provides that Faron earns $2,815 per month while Lana earns about $1,300 per month.  Under the stipulation and decree, Lana was awarded custody of the children and Faron was ordered to pay child support to her of $808 per month.
(footnote: 1)  The parties divided the personal property and assumed their individual debt.  Faron received the parties’ 1998 Dodge Caravan, subject to the debt on it.  Lana received the parties’ leased 1997 Mazda 626 automobile until the lease expired in April 2000, at which time Faron agreed to give her $3,000 for the purchase of an automobile.  In addition, Faron agreed to pay Lana $1,500 cash “for her interest in the savings account.”  Faron received the parties’ home, valued at $118,000, and he assumed the mortgage with a balance of $110,800.  In return, Faron agreed to “help [Lana] with moving expenses and to find another residence in which to live.  If necessary, [Faron] will help [Lana] with financing on the purchase of a mobile home.”  While Lana may have received more favorable terms if she had sought independent counsel to assist her, we cannot conclude, as a matter of law, that the stipulation and decree in this case involve such blatant, one-sided terms that they are unconscionable and unenforceable. 

[¶13] This case is also distinguishable from 
Weber v. Weber
, 548 N.W.2d 781 (N.D. 1996), wherein this Court reversed a divorce judgment and remanded the case to the district court with instructions the court scrutinize for unconscionability a property settlement agreement signed by the parties.  In 
Weber
, the wife, after one month of marriage, filed for divorce.  Her husband, who was not represented by counsel at the time, signed documents, including the property settlement agreement, in the office of his wife’s lawyer.  While the case was pending, the husband retained an attorney and filed a motion with the court to set aside the property agreement.  We reversed the district court’s denial of the motion, explaining:

The district court stated, “Notwithstanding the decision in Crawford, the obligation of the trial court is limited to a determination of whether or not the parties were capable of contracting with each other, freely and knowingly, and absent fraud, duress, menace or undue influence of one upon another, or a genuine mistake of fact or law.”  The purview of the district court in reviewing a property settlement agreement in a marital dissolution matter is not so limited. . . .

Property settlement agreements in divorce cases must be scrutinized for unconscionability.   The review for unconscionability is not ended by finding a lack of a trust relationship between the parties.

. . . .

The district court in this case abused its discretion by strictly limiting its inquiry to the factors it listed.

Id.
 at 783.  Here, the district court, in denying Lana Terry’s motion to vacate the divorce judgment and reopen the case, did not so narrowly limit its review of the circumstances as the trial court in 
Weber
.  In this case, the district court scrutinized the settlement agreement and expressly denied Lana Terry’s claim it was unfair, explaining:

While it is not unusual for a party to feel they would have liked to  benefit more from a judgment, the stipulation does not appear obviously one-sided or unfair.

[¶14] While the question of unconscionability is one of law, factual findings are necessary for the determination and those findings by the trial court are reviewed on appeal under the clearly erroneous standard under N.D.R.Civ.P. 52(a).  
Weber v. Weber
, 1999 ND 11, ¶ 8, 589 N.W.2d 358.  A finding of fact is clearly erroneous if it has no support in the evidence, or even if there is some supporting evidence, the reviewing court is left with a definite and firm conviction a mistake has been made, or the decision was induced by an erroneous view of the law.  
Id.
  We conclude the trial court’s finding the stipulation is not obviously one-sided is not clearly erroneous.  Under the circumstances, we further conclude the trial court did not err in determining that the stipulation was not unconscionable so as to justify vacating the judgment.

III

[¶15] We conclude the trial court did not abuse its discretion in ruling that Lana failed to provide sufficient grounds for disturbing the finality of the divorce judgment.    We,  therefore,  affirm  the  order  denying  her  motion  to  vacate  under

N.D.R.Civ.P. 60(b).

[¶16] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

William A. Neumann

Cynthia Rothe-Seeger, D.J.

[¶17] The Honorable Cynthia Rothe-Seeger, D.J., sitting in place of Sandstrom, J., disqualified.

Maring, Justice, concurring.

[¶18] I concur in the result.  I write because of my concern that the trial courts are abdicating their duty to order a fair and equitable divorce judgment when presented with settlement agreements.

[¶19] The record in this case establishes Lana Terry and Faron Terry were married on February 14, 1986.  On Christmas Eve 1999, Faron delivered copies of pleadings for divorce to Lana at her place of work.  Five days later, on December 29, 1999, Faron presented a stipulation to Lana for her signature, which she then signed.  By signing the stipulation, she admitted service of a copy of the Summons and Complaint which are also dated December 29, 1999.  Seven days later, on January 5, 2000, Lana signed an addendum amending the stipulation.  All pleadings were filed with the court on January 20, 2000.  Judgment was entered incorporating the stipulation, as amended by the addendum, on January 24, 2000, less than a month after commencement of the divorce action.  Lana served a motion to reopen the Judgment on August 29, 2000, seven months after the entry of the Judgment.  Her motion was based on N.D.R.Civ.P. 60(b) and that the Judgment was unconscionable.

[¶20] This was a long-term marriage.  Two children were born to Faron and Lana, both of whom were still minors at the time of the divorce.  The record indicates that while Faron attended law school, Lana obtained work and supported the family.  After Faron graduated, the couple eventually moved back to Minot, where Faron opened his own law practice and Lana worked for Manor Care Nursing Home.  At the time of the divorce, the parties’ stipulation indicated Faron earned approximately $2,815.00 net per month, or twice as much as Lana, who earned approximately $1,300.00 net per month.  I disagree with the majority that this is not a large disparity in income.  The parties accumulated very few assets, consisting mainly of the home, personal property, and retirement funds.  The property division does not indicate Lana received any income producing assets.  The Judgment did provide for $808.00 per month child support.  Therefore, Lana and the two children are living on approximately $2,108.00 per month, while Faron is living on $2,007.00 per month.

[¶21] In her affidavit, Lana outlines how she has been disadvantaged by the marriage:

I have had to follow Faron both in career moves, as well as moves on account of his going back to school.  During those periods of times I have changed jobs and not been able to build up retirement funds, or able to go to school myself.  Because Faron was obtaining higher education, that education was the product of my financial contribution to the marriage and allowed him to be a full-time student while he only had to work part-time.  During that period of time I maintained and provided for the house, took care of our children, arranged daycare, provided for meals, clothing, and did the other things that a primary care giver does.  I did not know at the time that signing the papers that I would not be able to modify the same to come back later for spousal support.  I was told at the time by Faron Terry that I would never get support and it was a waste of time for me to seek the same.

Our Court has said, “[a] disadvantaged spouse is one who has ‘foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse’s increased earning capacity.’”  
Sommer v. Sommer
, 2001 ND 191, ¶ 10.  In the stipulation, Lana waives her right to spousal support.  Lana was not represented by an attorney when she signed the stipulation or the addendum.

[¶22] The trial court, in entering the order for judgment of divorce, found the stipulation of the parties “to be a fair and reasonable agreement.”  The matter proceeded by default with no appearance by either party before the court.

[¶23] With reference to stipulations, we have said:

District courts should not blindly accept, however, the terms the parties agree upon. . . .  We have also held a district court should rescind an agreement if it is unconscionable. 

. . . .

Property settlement agreements in divorce cases must be scrutinized for unconscionability.

Weber v. Weber
, 548 N.W.2d 781, 783 (N.D. 1996) (citations omitted); 
accord
 
Weber v. Weber
, 1999 ND 11, ¶ 11, 589 N.W.2d 358.  A trial court must not abdicate its duties to make a just and proper distribution of property and to compel a party to pay the other spousal support “during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively” under N.D.C.C. § 14-05-24.

Therefore, district courts should make two findings when considering whether a settlement agreement between divorcing parties should be enforced.  The first inquiry is whether the agreement is free from mistake, duress, menace, fraud, or undue influence under N.D.C.C. § 9-09-02(1).

. . . .

The district court’s second inquiry is whether the agreement is unconscionable.

Weber
, 1999 ND 11, ¶¶ 12, 13, 589 N.W.2d 358 (citation omitted).  Our Court in 
Weber
 also concluded that the 
Ruff-Fischer
 guidelines were appropriate for a trial court to consider in determining the unconscionability of a settlement agreement “because a domestic relations agreement should not be scrutinized in the same way as a business contract.”  
Id.
 at ¶ 17.  Furthermore, our Court said “‘a stipulation in a divorce proceeding which occurs this rapidly with the use of one attorney and under serious threats of harm to one of the parties should be viewed with great skepticism.’”  
Id.
 at ¶ 18 (quoting 
Peterson v. Peterson
, 555 N.W.2d 359, 362 (N.D. 1996)).  Even though there was no serious threat of physical harm in 
Weber
, we noted:  “Weber was under strain from the threat of losing considerably more of his life’s earnings if he did not sign the agreement.”  
Id.

[¶24] Rather than make a mere cryptic finding that a settlement agreement is “fair and reasonable,” I urge trial courts to examine the content of settlement agreements for unconscionability and unfairness and to also examine the circumstances under which such agreements are entered. 

[¶25] Although the quickness of the signing of the stipulation and addendum and entry of judgment, the long-term marriage, the large disparity in income and earning capacity, the lack of assets, and the lack of representation by an attorney lead me to the conclusion the agreement is unconscionable, our standard of review of the findings of the trial court is clearly erroneous.  
Weber
, 1999 ND 11, ¶ 8, 589 N.W.2d 358.  Because I cannot say the trial court was clearly erroneous, I concur in the result.

[¶26] Mary Muehlen Maring

FOOTNOTES
1:    
Lana asserts a correct calculation of child support under the guidelines would require Faron to pay an additional $56 per month.  The trial court retains jurisdiction on child support issues and can entertain a motion to amend the child support order, under N.D.C.C. § 14-09-08.4(4), to conform to the guidelines.  Apparently, Lana has not filed such a motion.